## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **WALTER JONES, JR.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:14-cv-00849-AJB** |
| **CAROLYN W. COLVIN,** | : | |
| ***Acting Commissioner of*** | : | |
| ***Social Security,*** | : | |
| | : | |
| **Defendant.** | : | |

## O R D E R   A N D   O P I N I O N[1]

Plaintiff Walter Jones, Jr. ("Plaintiff") brought this action pursuant to

section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review

of the final decision of the Commissioner of the Social Security Administration ("the

Commissioner") denying his application for Disability Insurance Benefits ("DIB")

---

[1]     The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (*See* Dkt. Entries dated 5/7/2014 & 5/8/2014).  Therefore, this Order constitutes a final Order of the Court.

under the Social Security Act.[2]  For the reasons below, the undersigned **AFFIRMS** the final decision of the Commissioner.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and DIB on January 18, 2011, alleging disability commencing on January 5, 2010. [Record (hereinafter "R") 158-59].  Plaintiff's applications were denied initially and on reconsideration.  [*See* R100, 103-13].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  [R115-16].  An evidentiary hearing was held on October 31, 2012.  [R33-93].  The ALJ issued a decision on November 21, 2012,

---

[2]      Title II of the Social Security Act provides for federal DIB benefits. 42 U.S.C. § 401 *et seq.*  Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for Supplemental Security Income Benefits for the disabled ("SSI"). Title XVI claims, unlike Title II claims, are not tied to the attainment of a particular period of insurance disability.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).   Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.  *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).  Thus, in general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim. *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI).  Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims.

denying Plaintiff's application on the ground that he had not been under a "disability" at any time through the date of the decision.  [R20].  Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on February 19, 2014, making the ALJ's decision the final decision of the Commissioner. [R1-6].

Plaintiff then filed the present action in this Court on March 25, 2014, seeking review of the Commissioner's decision.  [*See* Doc. 1].  The answer and transcript were filed on August 20, 2014.  [*See* Docs. 9, 10].  On September 19, 2014, Plaintiff filed a brief in support of his petition for review of the Commissioner's decision, [Doc. 12], and on October 17, 2014, the Commissioner filed a response in support of the decision, [Doc. 13].[3]  The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs, and it is accordingly ripe for review pursuant to 42 U.S.C. § 405(g).

---

[3]     Plaintiff did not file a reply brief, and no request for oral argument was filed.  (*See* Dkt.).

3

## II.   STATEMENT OF FACTS[4]

### A.   *Background*

Having a date of birth of October 5, 1953, Plaintiff was fifty-six years old on the alleged onset date of January 5, 2010, and fifty-nine years old at the time of the ALJ's decision on November 21, 2012.  [R28, 40, 158].  He completed high school, has some college education, and previously worked as a firefighter and emergency medical technician ("EMT").  [R43, 48, 58, 184].  Plaintiff alleges he has been unable to work since January 5, 2010, because of headaches, high blood pressure, and hearing problems in both ears.  [R183; *see also* R190, 194-95, 210].

### B.   *Lay Testimony*

At the administrative hearing, Plaintiff testified that he could not work because of hearing loss.  [R49-55].  Despite alleging an onset date of January 5, 2010, Plaintiff testified that his last day of work was in December 2010, when he retired based on his more than thirty years of service.  [R44-45].  He also reported receiving a payout of $12,000 in the first quarter of 2011 for his accrued vacation and sick time, [R44], and

---

[4]    In general, the records referenced in this section are limited to those deemed by the parties to be relevant to this appeal.  [*See* Docs. 12, 13].

at some point receiving a lump payment as a result of a lawsuit his union had filed over the workers' loss of hearing, [R47].

Plaintiff testified that his hearing "seem[ed] to be getting worse and worse" and was affecting his ability to have normal face-to-face conversations, talk on the telephone, watch television, listen during church services, or perceive noises around him, such as nearby footsteps.  [R49, 54, 65-66, 68-69].  He indicated that the left side was "way worse" than the right side and that he had gotten into the habit of turning his head to listen.  [R62].  He also stated that background noise made the problem worse.  [R66].  Plaintiff said that he had tried off-the-shelf hearing aids and had tried hearing aids at the Veteran's Administration Hospital, but he found them cumbersome and said that they were too loud and produced a lot of feedback.  [R50-52].

Plaintiff did report, however, that the hearing loss did not restrict his driving or make it necessary for him to use any special equipment in order to drive.  [R42-43].  He was also able to do volunteer work with youth and spend time at the fire station.  [R57].  He stated that he has not looked for paid work since he retired.  [R48].

Plaintiff reported that he also had hypertension that, when elevated, made him dizzy, foggy, slurring, and slow, but that his blood pressure was under control with weight loss, and it was only his hearing loss that prevented him from working.

5

[R54-56].  He said that he had thought about trying to get a job as a dispatcher but he was concerned that he would mis-hear critical information.  [R64-65, 87-88].  Plaintiff was despondent regarding the hearing loss and the end of his job, and he explained that the hearing loss and his emotional response to the deaths of a couple of colleagues had motivated him to retire and prevented him from reapplying to be a firefighter, but he had not been referred for any treatment for emotional or mental difficulties.  [R69-72, 91-92].

### C.   Medical Records

On February 18, 2009, Plaintiff presented to Kenneth L. Gayles, M.D., P.C., for evaluation of hypertension.  [R258].  It was noted that Plaintiff was not taking medication, was inconsistently following his recommended diet, and was exercising sporadically.  [R258].  His weight was recorded as 302 pounds.  [R258].  It was also noted that Plaintiff denied anxiety, depression, memory loss, and sleep pattern disturbance.  [R258].  Dr. Gayles also noted that Plaintiff had a cooperative attitude, normal affect, clear and fluent speech, and intact recent and remote memory.  [R259].  An abdominal aorta ultrasound produced images within normal limits.  [R263].  Findings from an echocardiogram were consistent with hypertensive heart disease.  [R265].  Plaintiff was assessed with hypertensive heart disease, unspecified, without

6

heart failure; obesity, unspecified; and hypertension, unspecified. [R259]. He was prescribed medication; directed to exercise and follow a diet restricting salt, calories, and cholesterol; and avoid stress. [R259].

On August 3, 2009, Plaintiff returned to Dr. Gayles for evaluation of hypertension. [R268]. Plaintiff reported that he was feeling worse compared to his last visit, and it was noted that Plaintiff was not taking medication, was inconsistently following his recommended diet, and was exercising sporadically. [R268]. His weight was recorded as 299 pounds. [R268]. It was also noted that Plaintiff denied anxiety, depression, memory loss, and sleep pattern disturbance. [R268]. Dr. Gayles also noted that Plaintiff had a cooperative attitude, normal affect, clear and fluent speech, and intact recent and remote memory. [R269]. Plaintiff was assessed with palpitations; hypertensive heart disease, unspecified, without heart failure; shortness of breath; obesity, unspecified; and hypertension, unspecified. [R269]. He was prescribed medication; directed to exercise and follow a diet restricting salt, calories, and cholesterol; and directed to avoid stress. [R269].

On August 4, 2009, Plaintiff underwent a treadmill-echo stress test. [R252]. The results were within normal limits  [R253].

7

On April 8, 2010, Plaintiff returned to Dr. Gayles for evaluation of hypertension. [R258]. It was noted that Plaintiff was not taking medication, was inconsistently following his recommended diet, and was exercising sporadically. [R254]. His weight was recorded as 299 pounds. [R254]. It was also noted that Plaintiff denied anxiety, depression, memory loss, and sleep pattern disturbance. [R254]. Dr. Gayles also noted that Plaintiff had a cooperative attitude, normal affect, clear and fluent speech, and intact recent and remote memory. [R255]. An echocardiogram revealed moderate left ventricular hypertrophy and mild left diastolic dysfunction. [R278]. Plaintiff was assessed with shortness of breath; peripheral vascular disease, unspecified; obesity; and hypertension, unspecified. [R255]. He was prescribed medication; directed to exercise and follow a diet restricting salt, calories, and cholesterol; and directed to avoid stress. [R255].

A letter dated April 20, 2010, indicates that Plaintiff attended a hearing-loss screening at Local 282 and was found to have an occupationally induced hearing loss. [R359].

On October 18, 2010, Plaintiff returned to Dr. Gayles for evaluation of hypertension. [R279]. He stated that he felt better compared to his last visit but that he had been ill for two weeks and was unable to work. [R279]. It was noted that

8

Plaintiff was not taking medication, was inconsistently following his recommended diet, and was exercising sporadically. [R279]. His weight was recorded as 297 pounds. [R279]. It was also noted that Plaintiff denied anxiety, depression, memory loss, and sleep pattern disturbance. [R279]. Dr. Gayles also noted that Plaintiff had a cooperative attitude, normal affect, clear and fluent speech, and intact recent and remote memory. [R280]. Plaintiff was assessed with hypertension, unspecified; obesity, unspecified; thyroid disorders, unspecified; and hypertensive heart disease, unspecified, without heart failure. [R280]. He was prescribed medication; directed to exercise and follow a diet restricting salt, calories, and cholesterol; and directed to avoid stress. [R280].

Plaintiff returned to Dr. Gayles on October 21, 2010. [R282]. It was noted that he had taken medication as ordered and that he denied chest discomfort, cough, dizziness, edema, faintness, fatigue, leg swelling, orthopnea, palpitations, and shortness of breath. [R282]. His weight was recorded as 295 pounds. [R282]. Plaintiff was assessed with hypertension, unspecified. [R282]. He was prescribed medication; directed to exercise and follow a diet restricting salt, calories, and cholesterol; and directed to avoid stress. [R282].

AO 72A
(Rev.8/8
2)

On November 24, 2010, Plaintiff returned to Dr. Gayles for evaluation of hypertension.  [R284].  He stated that he felt better compared to his last visit and was taking medication as prescribed, but it was noted that he was inconsistently following his recommended diet and was exercising sporadically.  [R284].  It was also noted that Plaintiff denied anxiety, depression, memory loss, and sleep pattern disturbance. [R284].  Dr. Gayles also noted that Plaintiff had a cooperative attitude, normal affect, clear and fluent speech, and intact recent and remote memory.  [R285].  Results of another treadmill-echo stress test were within normal limits [R270, 288].  Plaintiff was assessed with shortness of breath; hypertension, unspecified; hypertensive heart disease, unspecified, without heart failure; and obesity, unspecified.  [R285].  He was prescribed medication; directed to exercise and follow a diet restricting salt, calories, and cholesterol; and directed to avoid stress.  [R285].  It was noted that Plaintiff was unable to return to work for two weeks.  [R286].

On February 10, 2011, Plaintiff returned to Dr. Gayles for evaluation of hypertension.  [R273, 290, 313].  It was noted that Plaintiff was taking medication as prescribed, but was inconsistently following his recommended diet and was exercising sporadically.  [R273, 290, 313].  It was also noted that Plaintiff denied anxiety, depression, memory loss, and sleep pattern disturbance.  [R273, 290, 313].  Dr. Gayles

AO 72A
(Rev.8/8
2)

also noted that Plaintiff had a cooperative attitude, normal affect, clear and fluent speech, and intact recent and remote memory. [R274, 291, 314]. He was assessed with palpitations; shortness of breath; hypertensive heart disease, unspecified, without heart failure; obesity; and dizziness and giddiness. [R274, 291, 314]. He was continued on medication, and it was noted that Plaintiff was unable to return to work for two weeks. [R274, 291, 314].

On February 11, 2011, Plaintiff underwent an extracranial vascular examination, which was recommended because of his dizziness and hypertension. [R316]. Some thickening was found. [R317].

Plaintiff underwent a consultative internal-medicine examination by Donna Miller, D.O.,[5] on April 14, 2011. [R297-300]. Plaintiff complained of a hearing disorder in both ears due to chronic noise exposure in his thirty-year career as a

---

[5]     Plaintiff asserts that there is a printout in the record indicating that Dr. Miller "does not meet the primary source equivalency requirement as set forth in the credentialing standards of accreditation organizations." [Doc. 12 at 2 n.2 [citing R308]]. Because Plaintiff does not explain what the printout means, how it relates to Plaintiff's allegations of error, or why the Court should find the printout to be reliable, the Court does not consider the printout in its analysis of the case. *See Sanchez v. Comm'r of Soc. Sec.*, 507 Fed. Appx. 855, 856 n.1 (11th Cir. Feb. 8, 2013) (per curiam) (noting that claimant waived certain arguments by not expressly challenging the ALJ's findings); *Outlaw v. Barnhart*, 197 Fed. Appx. 825, 827 n.3 (11th Cir. Aug. 10, 2006) (per curiam) (finding that the plaintiff waived an issue by failing to elaborate on his argument or provide a citation to authority regarding the argument).

AO 72A
(Rev.8/8
2)

firefighter.  [R297].  He indicated that he had trouble hearing, especially if there is background noise around him, and that he has to ask questions repeatedly.  [R297].  He also stated that his doctor had placed him on medication for hypertension but that he had not been very compliant.  [R297].

Plaintiff reported that he cooks five times a week, cleans seven times a week, does laundry three times a week, and shops once a week.  [R297].  He also stated that he showers and dresses daily and that he enjoys watching television, listening to the radio, walking, and socializing with friends.  [R297].

Dr. Miller observed that Plaintiff was 6' 3-1/2" and weighed 295 pounds.  [R297].  She also observed that during the course of the examination, she had to repeat one question, but that Plaintiff was otherwise able to hear normal conversation.  [R297].  She diagnosed Plaintiff with a hearing disorder and found that he was obese, but she noted no other problems.  [R298-99].  She also recommended that Plaintiff avoid exposure to loud noises.  [R299].

On April 18, 2011, Plaintiff presented to John Stenievich, M.D., for an audiologic evaluation.  [R301-02].  Dr. Stenievich noted that Plaintiff had been exposed to loud noises in the course of his work for many years and that Plaintiff complained of difficulty hearing conversations and making out voices in crowds.  [R301].

12

Dr. Stenievich found upon physical examination that Plaintiff was "somewhat hard of hearing" but that his "[s]peech discrimination was judged to be excellent bilaterally." [R301].  He assessed severe bilateral noise-induced sensorineural hearing loss and recommended that Plaintiff be fitted for hearing aids.  [R301].

On May 4, 2011, Plaintiff returned to Dr. Gayles for evaluation of hypertension. [R319].  He stated that he felt worse compared to his last visit although he was taking medication as prescribed.  [R319].  It was noted that he was inconsistently following his recommended diet.  [R319].  Although it was noted that Plaintiff denied anxiety, depression, memory loss, and sleep pattern disturbance, it was also noted that Plaintiff was exercising sporadically and reported associated anxiety, chest pain, dizziness, palpitations, and shortness of breath.  [R319].  Dr. Gayles also noted that Plaintiff had a cooperative attitude, normal affect, clear and fluent speech, and intact recent and remote memory.  [R320].  His weight was recorded as 298 pounds.  [R320].  Plaintiff was assessed with chest pain, unspecified; abnormal electrocardiogram; hypertension, unspecified; shortness of breath; and palpitations.  [R321].  He was prescribed medication; directed to exercise and follow a diet restricting salt, calories, and cholesterol; and directed to avoid stress.  [R320].  It was noted that Plaintiff was unable to return to work for two weeks.  [R321].

13

On August 4 and 8, 2011, Plaintiff returned to Dr. Gayles for evaluation of hypertension. [R340, 343]. He stated both times that he felt better compared to his last visit although he was taking his prescribed medication inconsistently; inconsistently following his recommended diet; and exercising sporadically. [R340, 343]. It was also noted that Plaintiff denied anxiety, depression, memory loss, and sleep pattern disturbance. [R340, 343]. Dr. Gayles also noted that Plaintiff had a cooperative attitude, normal affect, clear and fluent speech, and intact recent and remote memory. [R341, 344]. His weight was recorded as 302 pounds on August 4 and 306 pounds on August 8. [R341, 344]. Plaintiff was assessed with hypertension, unspecified; abnormal electrocardiogram; hypertensive heart disease, unspecified, without heart failure; and thyroid disorders, unspecified. [R340-41, 344-45]. He was prescribed medication; directed to exercise and follow a diet restricting salt, calories, and cholesterol; and directed to avoid stress. [R340-41, 344-45]. While it was noted that Plaintiff was retired, [R344], the notes also indicate that Plaintiff would be unable to return to work for two weeks. [R342, 345].

On March 14, 2012, Plaintiff returned to Dr. Gayles for evaluation of hypertension. [R346]. He stated that he felt about the same as he did at his last visit. [R346]. It was also noted that Plaintiff was not taking any medication and was

14

inconsistently following his recommended diet. [R346]. Although it was noted that Plaintiff denied anxiety, depression, memory loss, and sleep pattern disturbance, it was also noted that Plaintiff was exercising sporadically and reported associated dizziness, paresthesia,[6] and shortness of breath. [R346]. Dr. Gayles also noted that Plaintiff had a cooperative attitude, normal affect, clear and fluent speech, and intact recent and remote memory. [R347]. His weight was recorded as 288 pounds. [R347]. An echocardiogram showed left ventricular diastolic dysfunction that could be associated with his chest pain and shortness of breath. [R351]. Plaintiff was assessed with shortness of breath; palpitations; dizziness and giddiness; hypertension, unspecified; abnormal electrocardiogram; thyroid disorders, unspecified; impotence, organic origin; and sleep disturbance, unspecified. [R347-48, 350-51]. He was prescribed medication; directed to exercise and follow a diet restricting salt, calories, and cholesterol; and directed to avoid stress. [R348]. Again, while it was noted that Plaintiff was retired, [R347], the notes also indicate that Plaintiff would be unable to return to work for two weeks, [R348].

---

[6]     Paresthesia refers to a burning or prickling sensation that is usually felt in the hands, arms, legs, or feet, but can also occur in other parts of the body. It is usually painless and described as tingling or numbness, skin crawling, or itching. National Institute of Neurological Disorders and Stroke, Paresthesia, http://www.ninds.nih.gov/disorders/paresthesia/paresthesia.htm (last visited 8/20/15).

15

On June 28, 2012, Plaintiff returned to Dr. Gayles for evaluation of hypertension. [R355]. He stated that he felt worse than he did at his last visit. [R355]. It was also noted that Plaintiff was not taking any medication and was inconsistently following his recommended diet. [R355]. Although it was noted that Plaintiff denied anxiety, depression, memory loss, and sleep pattern disturbance, it was also noted that Plaintiff was exercising sporadically and reported anxiety associated with his blood pressure. [R355]. Dr. Gayles also noted that Plaintiff had a cooperative attitude, normal affect, clear and fluent speech, and intact recent and remote memory. [R356]. His weight was recorded as 280 pounds. [R356]. Plaintiff was assessed with hypertension, unspecified; abnormal electrocardiogram; thyroid disorders, unspecified; sleep disturbance, unspecified; and hypertensive heart disease, unspecified, without heart failure. [R356-57]. He was prescribed medication; directed to exercise and follow a diet restricting salt, calories, and cholesterol; and directed to avoid stress. [R356].

### D.   *Vocational-Expert Testimony*

The vocational expert ("VE") testified that a person of Plaintiff's age and educational background, with prior work experience as a firefighter and no exertional limitations, but who is limited to jobs that do not require work at unprotected heights or noisy work environments that do not allow for hearing-protection devices, could not

AO 72A
(Rev.8/8
2)

work as a firefighter, but could work as a dispatcher, an EMT, a paramedic, a certified

nurse's aide, or a personal-care aide. [R76-83].

## III.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social
Security Act through December 31, 2015.

2.    The claimant has not engaged in substantial gainful activity since
January 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

. . .

3.    The claimant has the following severe impairments: high frequency
noise induced hearing loss bilaterally[;] hypertension improved
with medical compliance; and obesity (6'5" tall and 279 pounds at
the hearing) (20 CFR 404.1520(c)).

. . .

4.    The claimant does not have an impairment or combination of
impairments that meets or medically equals the severity of one of
the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
(20 CFR 404.1520(d), 404.1525 and 404.1526).

. . .

5.    After careful consideration of the entire record, the undersigned
finds that the claimant has the residual functional capacity
[("RFC")] to sit for an eight-hour workday with only normal breaks
and meal periods; stand and/or walk for an eight-hour workday
with only normal breaks and meal periods; and lift and carry

17

50 pounds occasionally and 25 pounds frequently.  Due to noise induced hearing loss, the claimant should not work in noisy work environments, wherein his hearing cannot be protected by earplugs or muff devices.  He is also unable to work at unprotected heights due to symptoms from hypertension.

. . .

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

. . .

7.      The claimant was born on October 5, 1953 and was 57 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

. . .

10.     Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).

. . .

18

> 11.    The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision (20 CFR 404.1520(g)).

[R22-28].

The ALJ explained that he had adjusted the alleged onset date because Plaintiff had worked as a firefighter for almost a year after the onset date Plaintiff had originally alleged.  [R22].  The ALJ further explained that in evaluating Plaintiff's disability claim, he gave great weight to the opinions of the consultative examiners, as he found the opinions consistent with their examinations, the objective evidence of record, and Plaintiff's reports of his activities of daily living.  [R26].  He also explained that he gave little weight to the opinion of Dr. Gayles because of: inconsistencies in the notes, such as notes indicating that Plaintiff was restricted from work while also indicating that Plaintiff was retired; failure to state any limitations that would have justified restriction from work, had such a restriction been applicable; and significant gaps between visits.  [R26].  The ALJ also noted that Dr. Gayles's notes appear to have much of the same information carried over from visit to visit.  [R25].

The ALJ also specified that although Plaintiff's good work record raised a favorable inference of an individual well motivated to work within his capabilities, the inference was outweighed by the facts that: Plaintiff took regular retirement rather than

19

applying for disability retirement; he has not been involved with vocational rehabilitation or looked for any work since his retirement; a consultative examination revealed that his hearing was normal at the conversational range and that he had excellent speech discrimination; Plaintiff was cleared for a hearing aid but said that he did not want it; he had a history of non-compliance with treatment for obesity and hypertension and admits to controlled blood pressure with compliance; and his activities of daily living are not limited.  [R26].

The ALJ further explained that based on Plaintiff's history of hypertension and testimony regarding difficulty hearing over background noise, he had limited Plaintiff's exertional level to medium and excluded dispatch work from the list of jobs available to Plaintiff, but that work as a certified nurses' aide or personal-care aide was appropriate.  [R26, 28].

## IV.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The impairment or

AO 72A
(Rev.8/8
2)

impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment

21

meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience.   *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform.  *Doughty*, 245 F.3d at 1278 n.2.  To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  *Id*.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy.   *Doughty*,

22

245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superceded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## V.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.  *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive.  *Lewis v. Callahan*, 125 F.3d1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam);

23

*Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

24

## VI.   CLAIMS OF ERROR

Plaintiff raises two allegations of error:  (1) that the ALJ failed to acknowledge evidence of a psychological disorder and develop the record accordingly, and (2) that the hypothetical question posed to the VE did not include all of Plaintiff's limitations and therefore was insufficient to solicit testimony that may serve as substantial evidence in support of the ALJ's decision.  [Doc. 12 at 3-9].  The Court addresses each allegation of error in turn.

### A.     *Psychological Disorder*

Plaintiff first argues that the ALJ erred by failing to include in the RFC a limitation to "low stress" work.  [Doc. 12 at 4].  He argues that the ALJ should have acknowledged that there was evidence of a severe psychological disorder (anxiety) and developed the record accordingly, but instead cut short Plaintiff's testimony as to the issue; did not acknowledge Dr. Gayle's recommendation to avoid stress due to Plaintiff's hypertension/heart condition; and failed to develop the record as to any psychological disorder.  [*Id*. at 4-6].

The Court is not persuaded.  It is true, as Plaintiff points out, that "where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a [Psychiatric Review Technique Form

25

("PRTF")] and append it to the decision, or incorporate its mode of analysis into his findings and conclusions."[7] *Moore v. Barnhart*, 405 F.3d 1208 1214 (11th Cir. 2005) (per curiam) [cited in Doc. 12 at 5].  Moreover, it is reversible error for an ALJ to fail to further develop the record with a consultative examination "when such an evaluation is necessary for him to make an informed decision."  *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (per curiam).

Here, the ALJ determined that there was no colorable claim of mental impairment, stating that if a mental impairment were medically determinable and somebody had made reference to it, he might order a consultative examination because of it, but finding that there were no grounds for ordering an examination because "there isn't any treatment, . . . there's no referrals, . . . you don't have the underlying medical support," and noting that in his review of the file, "it did not look like anybody was making any references to special treatment . . . ."  [R69-70].  The Court finds no basis for a conclusion that the ALJ erred in reaching this determination.

---

[7]       When a mental-impairment evaluation is necessary,  the ALJ must use a "special technique" involving consideration of four areas of potential limitation: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. §§ 404.1520a, 416.920a.

Plaintiff did not list anxiety as a basis for disability in any of the documents he supplied to the Commissioner.  [*See* R183 (adult disability report alleging Plaintiff was unable to work due to headaches, high blood pressure, and hearing problems); R210 (disability report appeal stating that Plaintiff's hearing had become worse); R240 (representative brief alleging that Plaintiff was disabled due to bilateral hearing loss, hypertension, and obesity, and claiming that his hearing loss created an emotional impact on him by impairing his personal and professional relationships and his ability to perform a career he loved)].  Likewise, at the hearing before the ALJ, Plaintiff stated that the only impairment preventing him from working was his hearing loss. [R49-55, 60-61, 64-66, 71].  Dr. Gayles's notes did include recommendations to avoid stress and twice made reference to Plaintiff's reports of anxiety, but the notes indicated that the anxiety and need to avoid stress were associated with Plaintiff's hypertension, [R319 (Plaintiff's report of exercise-associated anxiety), R355 (Plaintiff's report of anxiety associated with his blood pressure); *see also* Doc. 12 at 4-5 (noting that Dr. Gayle made his "recommendation to avoid stress due to his hypertension/heart condition")], which Plaintiff testified had resolved with weight loss, [R56].  And while the ALJ did interrupt Plaintiff's testimony about the emotional impact of his alleged hearing loss, [R69], review of the transcript reveals that the ALJ then apologized and

27

allowed Plaintiff to testify to anything additional he wanted the ALJ to know, and Plaintiff responded by providing uninterrupted testimony that his decision to retire was driven, in part, by "a couple of deaths on the fire department," which led him to conclude that he had "had enough."  [R69-72].  Additionally, while there was some back-and-forth during Plaintiff's attempt to clarify the intensity of the stress caused by the deaths of fellow firefighters, the transcript reveals that Plaintiff fully communicated that it was the "ultimate stress" for him because as a firefighter, he was responsible for the lives of his colleagues and the public.  [R91-92].

Thus, in sum, it appears that Plaintiff was given a full opportunity to testify as to any mental impairments and that the references to anxiety in the record were not associated with a separate mental impairment but instead were associated with Plaintiff's hypertension, which had resolved; Plaintiff's work as a firefighter, which the ALJ found that he was no longer capable of performing; and his alleged hearing loss. Consequently, the undersigned finds no reversible error in the ALJ's determination that Plaintiff had not raised a colorable claim of mental impairment or the ALJ's resulting decision not to order a consultative examination or complete a PRTF in this case.

**B.      *Sufficiency of Hypothetical Question***

Plaintiff next argues that the VE's testimony does not constitute substantial evidence supporting the ALJ's decision because the hypothetical question the ALJ posed to the VE did not reflect a proper assessment of Plaintiff's mental condition and resulting limitations and the jobs identified do not accommodate Plaintiff's hearing limitations.  [Doc. 12 at 8].  Again, the Court cannot agree.

Having determined that Plaintiff has failed to show that the ALJ committed reversible error in his consideration of Plaintiff's mental condition, the Court likewise finds no basis for a determination that the hypothetical question was lacking in that regard.  It also bears noting that even if the Court were to presume that Plaintiff suffers from some degree of anxiety, Plaintiff has not argued that the requirements of the jobs the ALJ found him capable of performing—certified nurses' aide or personal-care aide—exceed his mental abilities.  *See Doughty*, 245 F.3d at 1278 n.2 (noting that it is the claimant's burden to prove that she is unable to perform the jobs that the Commissioner lists); *Young v. Astrue*, No. 8:09-cv-1056, 2010 WL 4340815, at *4 (M.D. Fla. Sept. 29, 2010) (noting that, in general, an error is harmless in a Social Security case if it "do[es] not affect the ALJ's determination that a claimant is not entitled to benefits").

29

Plaintiff's argument that the jobs the ALJ identified do not accommodate Plaintiff's hearing limitations is also unavailing. Plaintiff argues that he is incapable of working as a certified nurses' aide because he cannot hear well enough to meet the requirements of answering bells, an intercom system, or the telephone, and he suggests that he is incapable of working as a personal-care aid or home assistant because such a job requires the ability to hear vulnerable individuals. [Doc. 8 at 11-12].

Plaintiff's argument presupposes that the RFC limiting Plaintiff from working in noisy environments where his hearing cannot be protected fails to fully accommodate Plaintiff's hearing limitations. [*See id.*]. The ALJ explained, however, the reasons he did not find greater limitations in Plaintiff's ability to hear: while the consultative examination revealed a high-frequency loss of hearing, it also indicated that Plaintiff retained excellent speech discrimination and ability to hear at normal conversational range; Plaintiff's activities of daily living did not appear to be significantly limited by his hearing loss, as he reported driving without difficulty, doing volunteer work, and spending free time at the fire station with old friends; Plaintiff had been cleared for a hearing aid but refused it; and Plaintiff took regular retirement rather than applying for disability retirement. [R26-27]. The ALJ also noted that Dr. Miller had observed during her examination that despite Plaintiff's complaints of hearing loss, he was able

AO 72A
(Rev.8/8
2)

to hear normal conversation and asked her to repeat a question only once; that Dr. Miller limited Plaintiff only to avoid exposure to loud noise; and that Plaintiff had worked as a firefighter for approximately a year after his alleged onset date.  [R22, 24]. The ALJ further explained that he credited Plaintiff's testimony that he had difficulty hearing when more than one person was talking and therefore eliminated dispatch work from the vocations available to Plaintiff and instead relied on the VE's testimony that Plaintiff was capable of working as a certified nurses' aide or personal-care aide, vocations that do not present such issues.  [R26].

Given the ALJ's robust and detailed explanation for finding Plaintiff's claims of limitation less than fully credible, the undersigned finds that the RFC determination is indeed supported by substantial evidence.  In turn, the hypothetical question posed to the VE included the auditory limitation included in the RFC.  [*Compare* R23 *with* R76-77].  Thus, the undersigned concludes that the ALJ properly relied on the VE's testimony to find that a significant number of jobs existed in the national economy that Plaintiff could perform.  [R27-28].

AO 72A
(Rev.8/8
2)

## VII.   CONCLUSION

For the reasons above, the Court **AFFIRMS** the final decision of the Commissioner.   The Clerk is **DIRECTED** to enter final judgment in the Commissioner's favor.

**IT IS SO ORDERED and DIRECTED**, this the 10th day of September, 2015.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

32